AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

| LODGED |
|---|
| CLERK, U.S. DISTRICT COURT |
| 11/9/2022 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: ___DTA___ DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

**UNDER SEAL**

| FILED |
|---|
| CLERK, U.S. DISTRICT COURT |
| 11/10/2022 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: _____ DEPUTY |

United States of America

v.

VARUN AGGARWAL,

       Defendant.

Case No.   8:22-mj-00718-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. (See Attached Complaint's Statement of Facts Constituting the Offense or Violation which is incorporated as of this Complaint):

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1341 and 1343 | mail fraud and wire fraud |

This criminal complaint is based on these facts:

    *Please see attached affidavit.*

    ☒ Continued on the attached sheet.

/s/
_____
*Complainant's signature*

Timothy A. Jacoby II, SA-FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone. Date: 11/10/2022

_____
*Judge's signature*

City and state:  Santa Ana, California

Hon. John D. Early, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA
Brett Sagel
(x3598)

**Complaint's Statement of Facts**

**Constituting the Offense or Violation**

COUNT ONE

[18 U.S.C. § 1343]

Beginning at least as early as in or around January 2012 and continuing through in or around January 2022, in Orange County, within the Central District of California, and elsewhere, defendant VARUN AGGARWAL ("AGGARWAL"), knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud KBS Realty Advisors ("KBS") as to material matters, and to obtain money and property from KBS by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

On or about July 9, 2020, in Orange County, within the Central District of California, and elsewhere, defendant AGGARWAL, for the purpose of executing the above-described scheme to defraud, transmitted or caused the transmission of the following items by means of wire communication in interstate and foreign commerce:  (1) deposited into his Chase Bank Account number XXXXXX1408 a check for $20,436 from Mjam Studios LLC using JPMorgan Chase Bank's "Chase QuickDeposit" feature through its online banking and cell phone applications through a server located outside the state of California.

COUNT TWO

[18 U.S.C. § 1341]

Beginning at least as early as in or around January 2012 and continuing through in or around January 2022, in Orange County, within the Central District of California, and elsewhere, defendant VARUN AGGARWAL ("AGGARWAL"), knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud KBS Realty Advisors ("KBS") as to material matters, and to obtain money and property from KBS by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

On or about July 10, 2020, in Orange County, within the Central District of California, and elsewhere, defendant AGGARWAL, for the purpose of executing the above-described scheme to defraud, knowingly caused the following mail matter to be sent and delivered by the United States Postal Service or a private and commercial interstate carrier: (1) three checks totaling $3,600 from KBS to A.G. to pay the Total Ethics invoice, including: Check #488 for $1,350; Check #1380 for $1,800; and Check #650 for $450.

## AFFIDAVIT

I, Timothy A. Jacoby II, being duly sworn, declare and state as follows:

### INTRODUCTION

1.  I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since 2005. I am currently assigned to the bank and securities fraud squad at the Orange County Resident Agency of the FBI Los Angeles Field Office and have been so assigned for approximately ten years. Since entering duty, I have participated in investigations involving criminal, national security, and counterterrorism matters. I have attended FBI Basic Agent Training in Quantico, Virginia, as well as additional training courses related to counterterrorism, counterintelligence, and criminal investigations. In addition, I have received training in financial analysis and identification of fraudulent financial activity both in Quantico and elsewhere. As part of my duties, I have conducted criminal investigations and have participated in the execution of numerous warrants. Prior to joining the FBI, I was a financial analyst for seven years. I have a business degree with an emphasis in finance and obtained a Master's degree in Business Administration.

### PURPOSE OF AFFIDAVIT

2.  This affidavit is submitted in support of an arrest warrant for and criminal complaint charging Varun Aggarwal ("AGGARWAL") with: (a) one count of mail fraud, in violation of

1

18 U.S.C. § 1341; and (b) one count of wire fraud, in violation of 18 U.S.C. § 1343.

3.  The facts set forth in this affidavit are based on my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and complaint and does not purport to set forth all of my knowledge of the investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## SUMMARY OF PROBABLE CAUSE

4.  Based on the investigation to date, which includes review of documents and bank records, review of AGGARWAL's personal email account, recorded conversations of AGGARWAL, and interviews of individuals with knowledge of the scheme, beginning at least as early as 2012 and continuing through at least January of 2022, subject VARUN AGGARWAL used his position of Chief Audit, Compliance, and IT Officer with KBS Realty Advisors ("KBS"), located in Newport Beach, California, to steal more than $2.5 million from KBS.  Unbeknownst to KBS, AGGARWAL had companies controlled by his friends and family become approved vendors at KBS.  Once approved, AGGARWAL had these companies bill KBS for consulting services that were not performed.  Once KBS paid the fictitious invoices, the vendor companies forwarded the funds to AGGARWAL, typically minus a small fee.

**STATEMENT OF PROBABLE CAUSE**

5. According to information provided by KBS, from 2012 through 2022, AGGARWAL was employed in Newport Beach, California, by KBS in the internal auditing department, rising to the level of Director of Internal Auditing. As a member of the accounting group at KBS, AGGARWAL was intimately familiar with KBS's policies and procedures for payments to vendors.

6. Based on my review of records, information provided by KBS, and interviews, AGGARWAL used his knowledge of KBS's policies and procedures to have his friends and family perform contracting work for his groups at KBS. After several of these companies became approved vendors within KBS, AGGARWAL used these approved vendors to submit fraudulent invoices to KBS. AGGARWAL then funneled the payments on the invoices from KBS to his own bank accounts (through the approved vendors), at times without informing the vendors that the invoices and the payments on the invoices were for AGGARWAL's benefit.

7. During an interview with the government, A.G., a friend of AGGARWAL, stated as follows.[1]

   a. At AGGARWAL's suggestion, A.G. became a contracting vendor with KBS. In and around 2013 and continuing through at least 2021, AGGARWAL asked A.G. if AGGARWAL could use A.G.'s companies, specifically, Total Ethics and MJam Studios, for AGGARWAL to hire and pay contractors because A.G.'s

---

[1] After AGGARWAL told A.G. and A.G.'s father what AGGARWAL had done, A.G., through an attorney, reached out to the government to provide information and then met with and provided information to the government pursuant to a proffer agreement.

companies were already approved vendors with KBS. A.G. wanted and agreed to help his friend, and, in return, AGGARWAL stated A.G. could keep 5% of the contracting fees for which AGGARWAL used A.G.'s companies.

   b. Late in or about 2015, AGGARWAL told A.G. that AGGARWAL had suffered significant trading losses in the stock market. At the time, AGGARWAL told A.G. that AGGARWAL created fake vendor invoices that were submitted to and paid by KBS, some of which were paid through A.G.'s companies. A.G. claimed to have had no knowledge of the fake invoices and was unhappy that A.G.'s companies were exploited by AGGARWAL. AGGARWAL swore to never do it again, and A.G. believed him. A.G. continued to provide legitimate consulting services to KBS and continued to allow AGGARWAL to bill for other KBS contractors through his companies.

   c. On or about February 9, 2022, AGGARWAL called A.G. to tell A.G. that AGGARWAL quit his job with KBS. AGGARWAL explained KBS was going through a reorganization, and the new CFO found invoices from 2015 that did not match up and confronted AGGARWAL. AGGARWAL confessed to A.G. that he had stolen approximately $1,000,000 from KBS from 2013 to 2015.

   d. AGGARWAL then met with A.G.'s father seeking help on how to resolve the situation. AGGARWAL confessed to A.G.'s father that through 2021, AGGARWAL had stolen approximately $2,000,000 from KBS by having approved vendors submit fraudulent invoices to KBS, having KBS pay the vendors, and then having the vendors pay the money to AGGARWAL. A.G. never knew the

4

contractors for whom AGGARWAL asked A.G. to pay money back to AGGARWAL did not exist. A.G. believed the payments were legitimate because AGGARWAL even had A.G. issue Internal Revenue Service ("IRS") Form 1099s to AGGARWAL for the payments.

8. On March 20, 2022, after providing information to the government, A.G. had a meeting with AGGARWAL, which A.G. surreptitiously recorded at the behest of the government. AGGARWAL told A.G. that when KBS started analyzing its costs, AGGARWAL got scared. AGGARWAL stated he would not talk to people at the company because he knew KBS would find the fake invoices. A few weeks after the company started asking questions, AGGARWAL resigned from KBS. When KBS's CFO confronted AGGARWAL about the fake invoices when AGGARWAL resigned, AGGARWAL lied and said he did not know what the CFO was talking about. AGGARWAL said his biggest mistake when submitting the vendor invoices to KBS was using newly-approved vendors, because the newest vendors were the easiest for KBS to find. During his meeting with A.G., AGGARWAL attempted to strategize what his defense would be to KBS. AGGARWAL stated he could not claim work was done for the payments to the vendors because there was no such work and a review of AGGARWAL's corporate email would show no work product delivered from the vendors for the invoice periods.

9. In addition to A.G.'s companies, AGGARWAL used multiple other vendors to steal money from KBS. After AGGARWAL left KBS, KBS reviewed documentation on AGGARWAL's work computer. The review revealed two spreadsheets titled

"Household Budget.xlsx" and "Household Budget-VAggarwal-NB.xlxs." Within these spreadsheets, AGGARWAL appeared to keep track of the approved vendor invoices from which AGGARWAL had these companies bill KBS for consulting services that were not performed and forward the funds to AGGARWAL. Many of the invoice numbers on the spreadsheets had initials next to the amount paid column. KBS matched the initials with its vendors by reviewing these spreadsheets, the vendors for which AGGARWAL had asked approval, vendor payments, and invoice numbers made through KBS's accounting software. KBS provided its findings to the FBI.[2]

10. Based on A.G.'s statements and information found on AGGARWAL's work computer, the government sought an Order from the Court permitting the government to obtain AGGARWAL's tax returns and return information from the IRS pursuant to 26 U.S.C. § 6103. On May 19, 2022, the Honorable Fred W. Slaughter, United States District Judge, issued the Order permitting the IRS to disclose AGGARWAL's tax returns and return information for 2012 to the present.

11. A review of the tax information for AGGARWAL demonstrated that, as described by A.G., AGGARWAL had several of the vendors issue him IRS Form 1099s for the payments back to AGGARWAL. These vendors include, but are not limited to, Total

---

[2] The initials next to the amount paid columns on the spreadsheets correspond to the approved vendors, as described in paragraph 11, below. I was able to determine this through a review of the records in this matter that the approved vendors AGGARWAL used to pay him money pursuant to his scheme described herein matched the information in the above-described spreadsheets.

6

Ethics, Mjam Studios, Harrison & Sons, Jehovah Media, Inc., Workforce Now, and Proplus Systems, Inc.  According to A.G., AGGARWAL used his friends and families as vendors.  This is further confirmed by information obtained from KBS.  Discovered on AGGARWAL's work computer was an Affidavit Letter of Support for P.S. and R.S., signed by AGGARWAL, and addressed to the United States Customs and Immigration Services.  The vendor Workforce Now is a "doing business as" for R.S.

    12.  I have reviewed the information provided by KBS, bank account information related to AGGARWAL and others involved in the scheme, and IRS tax information received via court order related to AGGARWAL's personal tax filings.  The review of these records demonstrates AGGARWAL, using approximately six vendors, stole approximately $2,601,246.06 from KBS between approximately January 1, 2012, and January 13, 2022.

    13.  A.G. explained the following process AGGARWAL established for invoices to be submitted to KBS for payment.  AGGARWAL would forward an invoice to A.G.  A.G. then submitted the invoice to KBS for payment.  KBS paid the invoice submitted by A.G. via a check, which was mailed to A.G.  AGGARWAL then invoiced A.G. an amount to be paid to AGGARWAL, less the 5% fee for A.G.  A.G. then sent the money owed to AGGARWAL and provided an IRS Form 1099 to AGGARWAL.  AGGARWAL would then pay state and

federal taxes based on the amounts provided in the 1099s AGGARWAL received from A.G.[3]

14. Based on the information provided by A.G., a review of bank documents, and information provided by KBS, on August 29, 2022, the Honorable Douglas F. McCormick, United States Magistrate Judge, issued a search warrant for AGGARWAL's personal gmail email account.[4] On September 12, 2022, Google LLC provided content in line with the above-referenced search warrant. A review of the emails showed AGGARWAL communicating with approved KBS vendors from AGGARWAL's personal email account. The communications included copies of invoices AGGARWAL provided to the vendors to send to KBS -- invoices for services AGGARWAL allegedly supplied to the KBS vendors -- and discussions of payment to AGGARWAL related to the fake KBS invoices.

15. In addition to the process described above for how AGGARWAL got A.G. to submit fake invoices to KBS for payment, a review of AGGARWAL's personal email account, records provided by KBS, the IRS tax documents, and AGGARWAL's bank statements show a similar pattern with the other vendors. AGGARWAL sent vendors invoices to submit to KBS, the vendors submitted the invoices to KBS to pay the vendors, the vendors received payments from KBS,

---

[3] At the time, A.G. did not know these invoices were fake. Through my review of the evidence to date, however, I have determined this process was how AGGARWAL had A.G. submit fake invoices to KBS for AGGARWAL's scheme.

[4] For privacy purposes, I am not including the actual gmail address AGGARWAL used. I differentiate between AGGARWAL's personal email address and his KBS email address.

and AGGARWAL then received payments from the vendors and paid taxes on the amounts he received based off 1099s he received from the vendors.

16. The following transactions are examples of many similar transactions I reviewed. They illustrate the activity that began in 2012 and ran through January of 2022 and outline how AGGARWAL fraudulently moved funds from KBS to approved vendors with whom he had a personal relationship and then to himself. These examples correspond to and support the individual mail and wire fraud counts in the complaint.

   a. According to information contained in AGGARWAL's personal email account, on June 26, 2020, AGGARWAL invoiced A.G. for May and June 2020 fees totaling $20,436. This invoice was one of many submitted by AGGARWAL to A.G. to obtain the payments from KBS for vendor fees for which no work was completed by a contractor. A review of AGGARWAL's Chase Bank Account number XXXXXX1408 showed a check from Mjam Studios LLC, a company owned by A.G., for $20,436 deposited on or about July 9, 2020. This check was deposited into AGGARWAL's account through a "Remote Online Deposit." According to Keith Allen, Electronic Crime Investigator with JPMorgan Chase Bank, a "Remote Online Deposit" indicates a check was deposited through JPMorgan Chase Bank's "Chase QuickDeposit" feature through its online banking and cell phone applications. The servers that manage and process these deposits are located outside the state of California resulting in an interstate wire.

9

    b. On July 6, 2020, AGGARWAL, using his personal email address, sent an email with the subject "email back. this is for consulting services" to a personal email account controlled by A.G.  The email contained an attachment "Invoice_KBS10292_June 22-26 2020.pdf".  The attachment was a copy of an invoice on company letterhead from a company controlled by A.G. directed to KBS with a recipient of AGGARWAL. The invoice contained the dates worked (June 22-June 26, 2020), the number of hours per day worked (8), and the rate per hour ($90) for a total invoice of $3,600.  On July 7, 2020, a business email address controlled by A.G. sent an email to AGGARWAL's KBS email address with the subject "Invoice 10292". A review of the attachment titled "Invoice_KBS10292_June 22-26 2020.pdf" showed it matched the invoice AGGARWAL provided to A.G. the previous day.

    c. Based on the invoice created by AGGARWAL and submitted to KBS by A.G. through AGGARWAL's KBS email address, KBS paid the invoice to A.G.'s company, Total Ethics on July 10, 2020.  According to information provided by KBS obtained from KBS's accounting and accounts payable systems, on or about on July 10, 2020, KBS mailed A.G. three checks totaling $3,600 to pay the Total Ethics invoice, including: Check #488 for $1,350; Check #1380 for $1,800; and Check #650 for $450.  Based on my discussion with representatives for KBS, I know that KBS's standard practice once its accounts payable system issued a check was to mail the check to the payee through the United States Mail or private and commercial interstate carrier.  This

invoice was one of many submitted by A.G. to KBS through his company Total Ethics for vendor fees for which no work was completed by a contractor.

## REQUEST FOR SEALING

17. I request that the criminal complaint, the arrest warrant, and this affidavit be kept under seal to maintain the integrity of this investigation until further order of the Court, or until defendant makes his initial appearance on the arrest warrant. This criminal investigation is ongoing and is neither public nor known to AGGARWAL and other potential subjects of the investigation. Through my investigation, I know that AGGARWAL has ties to India and has travelled there, including recently. Public disclosure of the complaint, arrest warrant, and this affidavit prior to AGGARWAL's arrest and initial appearance could cause AGGARWAL and others to accelerate any existing or evolving plans, and give them an opportunity, to destroy or tamper with evidence or flee the jurisdiction.

## CONCLUSION

18. For all the reasons described above, there is probable cause to believe that AGGARWAL has committed mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343.

/s/
Timothy A. Jacoby II,
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1. by telephone on this  10   day of November, 2022.

HONORABLE JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE